IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| L-S INDUSTRIES, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| J. CHRISTOPHER MATLACK, | ) ) | |
| Defendant/Counter-Plaintiff, | ) ) | No. 3:07-CV-273 |
| v. | ) ) | |
| WILLIAM HUGHES and L-S INDUSTRIES, INC., | ) ) ) | |
| Counter-Defendants. | ) | |

**MEMORANDUM OPINION**

This civil action is before the court for consideration of "Counter-Defendant, L-S Industries, Inc.'s Motion for Summary Judgment Pursuant to FRCP 56(b)"[1] [doc. 20] and the "Motion for Partial Summary Judgment" filed by defendant/counter-plaintiff Christopher Matlack [doc. 26]. The parties have submitted their responses, and the motions are ripe for the court's consideration.

---

[1] The motion caption and opening line indicate that only L-S Industries is moving for summary judgment. However, later in the motion, reference is made to the other counter-defendant, William Hughes, as also moving for summary judgment. For simplicity, the court will refer to the motion as L-S Industries's motion for summary judgment unless a specific reference to Hughes is necessary.

I.

*Background*

In January 2000, defendant/counter-plaintiff, Christopher Matlack ("Matlack"), began working for plaintiff/counter-defendant, L-S Industries ("LSI"). LSI is a manufacturer and supplier of specialized plastic products, like plastic mail totes. Matlack, who had experience in the plastic industry, was hired to work in sales and marketing. During his employment, he worked out of his home in the Atlanta area. Matlack and LSI did not enter into a non-compete agreement during their relationship. Matlack and counter-defendant William Hughes ("Hughes"), president of LSI, entered into a commission agreement on July 20, 2001, the final version of which calls for Matlack to receive a commission on 10% of net profit. On April 27, 2007, Matlack completed his last day of work with LSI; however, he was officially on the payroll until May 4, 2007. Thereafter, counsel for LSI wrote a letter to an individual at Composit Containers, LLC, inquiring about Matlack's alleged conflict of interest based on Matlack's activities prior to leaving LSI. Also after Matlack's departure from LSI, Bonnie Finchum ("Finchum"), CEO at LSI, sent an email to three individuals at a company named Inteplast World-Pak commenting on Matlack's business conduct.

On June 12, 2007, LSI filed suit against Matlack in the Chancery Court for Knox County, Tennessee, asserting several causes of action: breach of employee fiduciary duty of loyalty; tortious interference with business; intentional interference with contracts; violation of Tennessee uniform trade secrets act; and unfair competition. LSI contends that

2

Matlack used confidential information obtained while an LSI employee to pursue vendors and customers of LSI following his employment. LSI also contends that Matlack was representing other business interests while still employed by LSI.

Matlack removed the case to this court. Upon filing his answer, Matlack asserted a counter complaint against LSI and named Hughes as a counter-defendant as well [doc. 7]. In his counter-complaint, Matlack asserted a claim for false light invasion of privacy, intentional interference with business relationship, and breach of contract and accounting. Matlack contends that the letter sent to Composite Containers and the email sent by Finchum placed him in a false light and that LSI interfered with his business relationships. Matlack also contends that his commission was not correctly calculated because Hughes took a large payment at the end of the year that he characterized as "salary" rather than bonus to justify reducing the net profits, thus affecting Matlack's commission.

II.

*Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party may discharge its burden by demonstrating that the non-moving party has failed to establish an essential

3

element of that party's case for which he or she bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party need not support its motion with affidavits or other materials negating the opponent's claim. *Id.* at 323. Although the moving party has the initial burden, that burden may be discharged by a "showing" to the district court that there is an absence of evidence in support of the non-moving party's case. *Id.* at 325 (emphasis in original).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

4

III.

*Analysis*

**Matlack's Motion for Partial Summary Judgment**

Matlack has moved for summary judgment on two of the five counts in the complaint. For the reasons discussed below, his motion will be denied.

<u>Count 2 - Tortious Interference with Business</u>

LSI alleges in count 2 of the complaint its claim for "tortious interference with business" as follows:

> After pursuing an employment relationship with Del-Tec Corporation, but while still employed by LSI in April and May, 2007, Matlack continued to solicit, manage and accept purchase orders from customers for LSI plastic products, without securing these purchase orders for the benefit of LSI. Instead, Matlack solicited these customer orders for himself and/or his subsequent employer, Del-Tec, while being employed by LSI. During and subsequent to his LSI employment, Matlack has attempted to establish for himself and/or Del-Tec certain vendor relationships and open account credit terms, with LSI's key vendors of LSI's plastic products, for the purchase of unique Materials. Such customer and supplier business relationships being solicited by Matlack are unfairly competitive to LSI, and damage and interfere with its existing business relationships, long established around the purchase of unique Materials and sales of unique goods by LSI. Matlack's actions threaten to cause irreparable harm and extensive damage to LSI and LSI's relationships with customers and vendors.[2]

---

[2] LSI's claim is captioned "tortious interference with business," the elements of which are set out in *Carter's Court Associates v. Metropolitan Federal Savings*, 844 F. Supp. 1205, 1208 (M.D. Tenn. 1994) (citing *Lann v. Third Nat. Bank*, 277 S.W.2d 439 (Tenn. 1955)). LSI continues

5

Matlack contends he is entitled to summary judgment on this claim based upon *Trau-Med of America, Inc. v. Allstate Insurance Co.*, 71 S.W.3d 691 (Tenn. 2002). In *Trau-Med,* the Tennessee Supreme Court recognized the tort of intentional interference with business relationships. To prevail with such a claim, a plaintiff must demonstrate the following:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's *improper motive or improper means*; and finally, (5) damages resulting from the tortious interference.

*Id*. at 701 (footnotes and internal citation omitted) (emphasis in original). The fourth factor requires *either* improper motive or means, not both. With regard to the "improper motive" element, "the plaintiff [must] demonstrate that the defendant's predominate purpose was to injure the plaintiff." *Id*. at n.5. As to the "improper means" element, the Court provided examples:

> [W]e cite the following methods as some examples of improper interference: those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules, violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship; and those methods that violate an established standard of a trade

---

to argue this tort and case authority in its briefing, even though the continued viability of this specific tort is in doubt after *Trau-Med*. *See Trau-Med*, 71 S.W.3d at 698-99.

6

or profession, or otherwise involve unethical conduct, such as
sharp dealing, overreaching, or unfair competition.

*Id.* (internal citations omitted).

The only element that Matlack discusses is the fifth, damages. He contends that LSI has no proof of damages and has therefore failed to establish its claim. In its response, LSI submitted damages calculations which it argues support its claim for tortious interference with business. This documentation creates a material issue of fact as to the fifth element as required under *Trau-Med* to establish a claim for intentional interference with business relationships. Therefore, Matlack's motion for partial summary judgment will be denied on that basis.

### Count 5 - Unfair Competition

LSI's unfair competition count consists of one paragraph, which states, "The misappropriation, disclosure, and use by Matlack of LSI's trade secrets for his own benefit constitutes a violation of the Tennessee Trade Practices Act, TCA § 47-25-101 et. seq. and constitutes unfair competition."

Section 47-25-101 provides:

All arrangements, contracts, agreements, trusts, or combinations between persons or corporations made with a view to lessen, or which tend to lessen, full and free competition in the importation or sale of articles imported into this state, or in the manufacture or sale of articles of domestic growth or of domestic raw material, and all arrangements, contracts, agreements, trusts, or combinations between persons or corporations designed, or

7

> which tend, to advance, reduce, or control the price or the cost to the producer or the consumer of any such product or article, are declared to be against public policy, unlawful, and void.

This provision is Tennessee's anti-trust statute addressing the unlawful restraint of trade. *Dorsett Carpet Mills, Inc. v. Whitt Tile & Marble Dist. Co.*, 1986 WL 622, at *8 (Tenn. Ct. App. Jan. 2, 1986); *Dzik & Dzik, P.C. v. Vision Serv. Plan*, 1989 WL 3082, at *1 (Tenn. Ct. App. Jan. 20, 1989). Not just any action violates the statute to result in the restraint of trade. *Halvorsen v. Plato Learning, Inc.*, 167 F. App'x 524, 529 (6th Cir. 2006). The statute "says that 'arrangements, contracts, agreements, trusts, or combinations between persons or corporations' restraining trade will violate the law." *Id*. (citing *Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 522 (Tenn. 2005) ("According to its plain language, the [statute] prohibits *arrangements* that decrease competition or affect the prices of goods.") (emphasis added)).

The parties do not address the statute in their arguments before the court regarding the unfair competition claim asserted in the original complaint. Matlack contends that unfair competition and intentional interference with business relationships are the same tort. This is not the case. Intentional interference with business relationships is a discreet tort with five specific elements that must be demonstrated. *See Trau-Med,* 71 S.W.3d 691. LSI has pled a distinct count for unfair competition under the statute identified above and a distinct count for "tortious interference with business."

8

In its responsive argument, LSI also does not address the statute upon which it has based its unfair competition claim. It argues that "unfair competition is a generic name for several related torts involving interference with business prospects" and that Matlack's use of confidential information obtained as an LSI employee to pursue LSI vendors and customers after leaving LSI constitutes unfair competition.

The fact remains that the claim for unfair competition as alleged in the complaint is based upon violation of Tenn. Code Ann. § 47-25-101, which has not been addressed by the parties nor does it appear to be applicable in this case. Therefore, Matlack's motion for partial summary judgment as to count five will be denied. The parties will be ordered to file briefs of ten pages or less explaining to the court how § 47-25-101 sustains a claim for unfair competition based on the facts of this case.

**LSI's Motion for Summary Judgment**

LSI has filed a motion for summary judgment on all counts asserted in Matlack's counter-claim. For the reasons set forth herein, the motion will be granted in part and denied in part.

<u>Count I - False Light</u>

Matlack alleges that LSI and Hughes sent letters to numerous business contacts of his and that these letters insinuate that his communications and interactions with the recipients of the letters were unlawful or prohibited while he was employed by LSI. Matlack

9

also contends that Hughes contacted LSI customers and informed them that Matlack wrongfully received commissions from company named Inteplast while employed by LSI. Matlack further contends that the letters were sent to hurt his reputation within the plastic business. He also alleges that Hughes met with customers and informed them that Matlack wrongfully received commissions from Inteplast and that Matlack is trying to steal LSI's customers, all in an effort to hurt Matlack's reputation in the plastic industry.

Before proceeding further with the analysis of this issue, the court wants to make expressly clear that the only communications regarding Matlack's false light claim that are in the record and before the court are a letter [doc. 14, Ex. A] that was submitted as an exhibit to the counter-complaint, and an email [doc. 30, Ex. 17]. While Matlack refers to more that one letter in his counter-complaint and affidavit in response to LSI's motion, only one letter is before the court. LSI in its motion also refers to alleged "communications in letters or emails, or verbal communications between one or more individuals." Only one email concerning this issue is before the court, and that along with the letter are the only evidence on which the court will base its decision regarding Matlack's false light claim.

The letter at issue is dated August 3, 2007, and was sent to a gentleman at Composit Containers, LLC. It was signed by LSI's attorney of record with a copy sent to LSI. The reference on the letter's caption states: "Confirmation of sales agency/representation of Christopher Matlack." The two paragraphs in the letter state as follows:

10

> I am an attorney in Knoxville, Tennessee, representing L-S Industries, Inc., a supplier of specialized industrial packaging materials and products. L-S Industries formerly employed Chris Matlack as its sales manager for seven years, until May, 2007. L-S Industries obtained and is investigating communications that seem to establish Chris Matlack was engaged, on behalf of another business, in ongoing business dealings with your company regarding specification and supply of rotary die and bulk bin cover products and other products in May, 2007. This information was troubling to L-S Industries, because L-S Industries considers Mr. Matlack's conduct to conflict with its business interests, since Mr. Matlack was a full-time employee with management authority. L-S Industries is currently investigating Mr. Matlack's business relationship with your company on behalf of other companies pursuant to pending unresolved claims.
>
> I would appreciate the opportunity to speak to you on behalf of my client, L-S Industries, regarding these matters and your business history of dealings with Mr. Matlack. It is not my intention to inconvenience you or your company, or seek sensitive commercial or competitive information from you. However, the information I have and the status of my investigation to date leads me to believe that you may have knowledge that is material to my client's pending claims and the protection of its business relationships. I look forward to the opportunity to discuss this with you. I plan to contact you by telephone, or whatever other means you suggest, in a few days.

The email at issue was sent from Finchum on August 7, 2007, to three individuals at Inteplast World-Pak. The email states in pertinent part:

> I rec'd a call from John Jaszewski at MDI saying that Chris Matlack requested a quote on printed and die cut blanks for Fedex totes. They have a new guy (ex-Diversiplast employee) and Chris tried a back door approach since MDI has already refused to quote him the Fedex totes. Seems he's working all the extruders against each other. Thought you may be interested in the loyalty of your employee. We, unfortunately, are finding out the hard way.

11

In *West v. Media General Convergence, Inc.*, 53 S.W.3d 640 (Tenn. 2001), the Tennessee Supreme Court adopted the definition of false light invasion of privacy as set out in Section 652E of the *Restatement (Second) of Torts* (1977). *See also Flatt v. Tenn. Secondary Schs. Athletic Assoc.*, No. M2001-01817-COA-R3-CV, 2003 WL 61251, at *2 (Tenn. Ct. App. Jan. 9, 2003). The *Restatement* definition adopted by the *West* court states:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*West*, 53 S.W.3d at 643-44.

LSI has moved for summary judgment on plaintiff's false light claim arguing that plaintiff has not met the "publicity" requirement for the tort and on that basis the claim fails. The court agrees.

Comment a to § 652 states the following regarding publicity, "On what constitutes publicity and the publicity of application to a simple disclosure, see § 652D, Comment a, which is applicable to the rule stated here." *Restatement (Second) of Torts*, § 652E cmt. a (1977).

Comment a to § 652D defines "publicity" and states:

> *Publicity*. The form of invasion of the right of privacy covered in this Section depends upon publicity given to the private life of the individual. "Publicity," as it is used in this Section,

12

> differs from "publication," as that term is used in § 577 in connection with liability for defamation. "Publication," in that sense, is a word of art, which includes any communication by the defendant to a third person. "Publicity," on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches, or is sure to reach, the public.
>
> Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons. On the other hand, any publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity within the meaning of the term as it is used in this Section. The distinction, in other words, is one between private and public communication.

*Restatement (Second) of Torts* § 652D cmt. a (1977). The first illustration under this comment is as follows: "A, a creditor, writes a letter to the employer of B, his debtor, informing him that B owes the debt and will not pay it. This is not an invasion of B's privacy under this Section." *Id.*

Tennessee courts have not particularly addressed the publicity issue in the false light context. However, in *White v. Fort Sanders-Park West Medical Center*, No. E2006-00330-COA-R3-CV, 2007 WL 241024, at *7 (Tenn. Ct. App. Jan. 29, 2007), the Court touched upon the issue in affirming summary judgment for an employer in an employee's false light invasion of privacy claim. Plaintiff White had been suspended for giving a lortab

13

to a patient without waiting for a doctor's order. After leaving her employment, White sued her employer, and one of her claims was false light invasion of privacy. The Court of Appeals found, however, that "[p]laintiff's sole assertion in this regard is that she heard there was a nurse at Methodist Medical who said she knew about a nurse at Parkwest who was fired after 29 years of service for giving a lortab." The court concluded that White had not alleged facts sufficient to support her claim for false light invasion of privacy regarding the transmission of the alleged detrimental information and held that "the publication of information must go outside the employer for the claim to succeed." *Id.*

In other jurisdictions that have recognized the tort of false light invasion of privacy, courts have adopted the definition of "publicity" contained in § 652D, Comment a of the *Restatement*. *Moore v. Big Picture Co.*, 828 F.2d 270, 273-74 (5th Cir. 1987) (and cases cited therein); *see also Doe v. Hartnett*, No. CV960134840, 2002 WL 1293354, at *4 (Conn. Super. May 8, 2002) (and cases cited therein). "'Publicity' means communication to the public at large so that the matter is substantially certain to become public knowledge and that communication to a single person or a small group does not qualify." *Vande Hey v. Walla Walla Cmty. Hospice*, No. 26216-2-III, 2008 WL 152595, at *3 (Wash. App. Jan. 17, 2008) (internal quotation marks and citations omitted). "In the context of a false-light claim, giving publicity is making a matter . . . public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. Publicity is a concept more difficult to prove than [mere] publication,

14

which is an element of a defamation claim. The "publicity" element is not satisfied by the communicat[ion of] a fact . . . to a single person or even to a small group of persons." *Regions Bank v. Plott*, 897 So.2d 239, 245 (Ala. 2004) (internal quotation marks and citations omitted).

In this case, Matlack has failed to demonstrate that the letter addressed to a single individual at Composite Containers was "publicized" within the meaning of the false light tort. Nor has he shown that the email sent to three people in one company was "publicized." Even a communication to a small group is insufficient to demonstrate publicity within the definition of the *Restatement*. As discussed above, these are the only evidence before the court in support of Matlack's false light claim. The record contains no proof that the letter went anywhere other than to the individual to whom it was addressed at Composite Containers. Without evidence that it was communicated to the public at large or to so many people that its contents would become public knowledge, Matlack has not met the publicity element of his false light tort claim, and it must fail. The same holds true for the Finchum email. Therefore, the court will grant LSI's motion for summary judgment as to Matlack's false light invasion of privacy claim.

LSI also argues that the letter is privileged because it was generated in the course of litigation. Because of the holding on the publicity issue, the court does not need to reach this issue.

## Count II - Intentional Interference with Business Relationship

Matlack has captioned his claim "Intentional Interference with Business Relationship," the specific tort recognized by the Tennessee Supreme Court in *Trau-Med*. He alleges that he had existing business relationships with current and prospective customers and suppliers; that LSI and Hughes were aware of these relationships and have interfered with them; that LSI and Hughes intended to harm his reputation and discourage current and potential customers and suppliers from purchasing products from him; and that the actions of LSI and Hughes had caused him damages.

However, in its motion for summary judgment, LSI does not address the specific tort that Matlack has pled in his complaint. LSI sets out the elements for interference with another's business relationship citing *Carter's Court Associates v. Metropolitan Federal Savings*, 844 F. Supp. 1205 (M.D. Tenn. 1994). It does not cite *Trau-Med* or any of the cases that have followed *Trau-Med*. In order to be entitled to summary judgment on Matlack's specific claim for intentional interference with business relationships, LSI must set out the elements of the claim and then demonstrate how Matlack has no proof to establish those required five elements. LSI has not done that. Thus, there is a complete lack of argument on the record to establish that under applicable Tennessee law LSI is entitled to judgment as a matter of law on the claim as pled. Therefore, the court will deny LSI's motion for summary judgment on that basis.

16

### Count III - Breach of Contract and Accounting

Matlack had a commission agreement with LSI that states he was to receive a commission based on a percentage of the net profit of LSI. Matlack contends that Hughes paid himself a bonus out of the net profits after the end of the corporate year and before calculating Matlack's commission. As a result, Matlack claims he received a commission that was less than what he was promised under the agreement.

In support of its motion for summary judgment, LSI has submitted the affidavit of its CPA April D. Taylor who explains how Matlack's commission was calculated. In addition, Hughes testified in his deposition, "Everything that was paid to me was paid to me as a salary. I had no bonus." However, in response to the motion, Matlack has submitted minutes from the board of directors meeting for LSI showing that the board approved a $300,000 bonus for Hughes. Matlack also submitted payroll account records for December 2006 showing that Hughes was paid a $300,000 bonus.

These disputes create material issues of fact concerning Matlack's breach of contract and accounting claim. Accordingly, LSI's motion for summary judgment on that basis will be denied.

IV.

*Conclusion*

For the reasons stated herein, Matlack's motion for partial summary judgment will be denied. LSI's motion for summary judgment will be granted in part and denied in part. In addition, the parties will be ordered to submit briefs regarding the viability of LSI's unfair competition claim. An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge